## BACHMAN et al. v. BELASCO.

### (District Court, S. D. New York. July 9, 1913.)

COPYRIGHTS ☞65—INFRINGEMENT—DRAMATIC COMPOSITION.

A producer of a play *held* not chargeable with infringement of the copyright of another play by a different author to some extent similar in plot and treatment; it appearing that he had no knowledge of it and that the two plays, while independently written, were both suggested by the same magazine story dealing with hypnotism.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 62; Dec. Dig. ☞65.]

In Equity. Suit by Amelia Bachman and George L. McKay against David Belasco. Decree for defendant.

Decree affirmed in 224 Fed. 817.

Charles O. Maas, of New York City, for complainants.

A. J. Dittenhoefer, I. M. Dittenhoefer, and Dudley F. Phelps, all of New York City, for defendant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MAYER, District Judge. This suit for infringement of copyright exemplifies the practical value of the new Equity Rules—especially in the opportunity to see and hear the witnesses.

Nothing in the briefs submitted has changed the conclusion stated at the close of the trial.

The evidence is complete and satisfactory that Mr. Locke wrote "After Many Days" (subsequently called "The Case of Becky") without any knowledge of the existence of Miss Bachman's "Etelle." The writing of the play by Mr. Locke was the natural outcome of his interest in themes dealing with hypnotic influence and multiple personality, and when he was attracted by "How One Girl Lived Four Lives" by John Corbin, in the Ladies' Home Journal and Dr. Prince's book, he was at work on "The Climax"—a play in which hypnotism or mental suggestion is the predominant feature.

I am also satisfied beyond any doubt that Mr. Belasco never saw, read, or heard of "Etelle" prior to his acceptance of Locke's play.

It is entirely clear that the correspondence and conversations of Mr. Stillman (Mr. Belasco's play reader), with Miss Bachman, constituted a polite method of declining manuscript. Miss Bachman testified that her play had its foundation in the ideas suggested by John Corbin's article. That being so, and the facts found by me being as above stated, it follows that complainants had no case. Harper & Bros. v. Kalem, 169 Fed. 61, 94 C. C. A. 429, affirmed 222 U. S. 55, 32 Sup. Ct. 20, 56 L. Ed. 92, Ann. Cas. 1913A, 1285; Glaser v. St. Elmo Co., Inc. (C. C.) 175 Fed. 276.

It is not necessary to go any further to warrant the dismissal of the bill, but it may be remarked that "The Case of Becky" is in substantial respects different from "Etelle."

It is to be expected that two playwrights working independently from a common source may develop similarities in their plots and in their lines, but "The Case of Becky" displays the skill of the experienced playwright in a number of important particulars and details not to be found in "Etelle." It is unnecessary to set forth these differences at length, but any one interested may find an elaborate analysis in the appendix which forms part of defendant's brief.

The bill is dismissed, but without costs, because the Stillman correspondence undoubtedly led Miss Bachman into the belief that her manuscript had been read by defendant.

Settle decree on notice.